The STATE of Ohio, Appellee,

v.

WALKER, Appellant.

[Cite as *State v. Walker* (1993), 90 Ohio App.3d 352.]

Court of Appeals of Ohio,
Marion County.

No. 9-93-17.

Decided Sept. 15, 1993.

*Thomas A. Mathews,* for appellant.

Evans, Presiding Judge.

This is an appeal by defendant Keith A. Walker (appellant) from a judgment of the Court of Common Pleas of Marion County convicting him on one count of aggravated burglary, in violation of R.C. 2911.11(A)(3), a felony of the first degree.

On October 24, 1992, Lloyd Fisher, a police officer for the city of Marion, was called to investigate a burglary which had allegedly occurred the night before at the home of Donn Craner. The officer testified at appellant's trial that his investigation eventually led him to appellant, who admitted during the officer's initial questioning that he had participated in the burglary along with two "friends." Craner himself had discovered the identity of one of the friends, Rebecca Holbrook, who subsequently returned to Craner all of the stolen items except for a pendant, which she had lost or sold, and a beaded leather "ammuni-

tion" pouch which appellant admitted he had taken. Holbrook implicated appellant in the burglary during her initial conversation with the investigating officer.

Appellant was arrested and charged with aggravated burglary. Following a trial to the court on March 11, 1993, appellant was found guilty as charged. The court then ordered a presentence investigation. Appellant was subsequently sentenced to an indefinite five-to-twenty-five-year term of imprisonment. He has appealed his conviction, asserting four assignments of error.

I

"The trial court did not have jurisdiction to try the defendant because the court failed to strictly comply with O.R.C. § 2945.05 and obtain a proper waiver of defendant's right to a jury trial."

The first assignment of error is not well taken. We disagree with appellant's contention that his waiver of a jury trial failed to meet the requirements of R.C. 2945.05 and Crim.R. 23(A).[1] Based upon our review of the record, including a reading of the transcript of the trial, we find that the requirements of the law were satisfied in this case.

On March 5, 1993, appellant filed the following signed, written "waiver of jury trial":

"Being fully aware that I have a constitutional and statutory right to trial by jury with respect to the charges placed against me in this action, I do hereby voluntarily waive and relinquish my right to be tried by jury, and I choose instead to be tried by a judge of this court.

"I further stipulate and acknowledge that this waiver is executed by me knowingly, and voluntarily, without threats or promises of any kind."

This waiver was subsequently noted by the trial court as being a part of the trial record.

Contrary to appellant's argument, we find that the above waiver language substantially complies with that required by R.C. 2945.05. In addition, the transcript reveals that appellant reaffirmed his waiver orally, in open court, following an admonition and explanation by the trial judge immediately preceding the trial. See *State v. Morris* (1982), 8 Ohio App.3d 12, 8 OBR 13, 455 N.E.2d

---

1. In *State v. Tate* (1979), 59 Ohio St.2d 50, 13 O.O.3d 36, 391 N.E.2d 738, the Supreme Court found that, although under Section 5(B), Article IV of the Ohio Constitution the Criminal Rules supersede any analogous statutes to the extent of any conflict, R.C. 2945.05 "remains effective as prescribing the mandatory procedure for waiving the right to a jury trial," "since there is no conflict between Crim.R. 23(A) and R.C. 2945.05." *Id.* at 53–54, 13 O.O.3d at 37–38, 391 N.E.2d at 739–740. Accord *State v. Morris* (1982), 8 Ohio App.3d 12, 13–14, 8 OBR 13, 14–15, 455 N.E.2d 1352, 1354–1355.

1352 ("[A] written waiver signed by the defendant prior to trial and followed by a one sentence inquiry by the trial judge is sufficient to insure defendant's rights"). *Id.* at 14, 8 OBR at 15, 455 N.E.2d at 1355 (citing *State v. Johnson* [Mar. 5, 1981], Cuyahoga App. No. 42722, unreported).

Appellant contends that, in addition to the mandate that the waiver must be written, R.C. 2945.05's requirement that the waiver be "made" in open court mandates an actual "signing" of the written waiver before the trial judge in open court.[2] Appellant further argues that his interpretation of the statutory requirement is supported by the Supreme Court's opinion in *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464.

However, in *Jells,* the appellant contended that the trial court erred in not conducting a "thorough" enough inquiry as to appellant's understanding of his waiver of a jury trial. The court therein had, in open court, reviewed the defendant's written waiver, and inquired of him whether he had voluntarily executed the signed waiver. The Supreme Court determined that this brief colloquy was sufficient to establish that "an intelligent, voluntary, and knowing waiver was made." The court stated as follows:

"There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." *Id.* at 25–26, 559 N.E.2d at 468.

The analysis was ended at that point, however, and the court made no attempt to clarify the meaning of the statutory language which provides:

"Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel." R.C. 2945.05.

In light of *Jells* and *Morris,*[3] *supra,* we interpret the provision to mean that there must be further evidence on the record, in addition to the signed writing,

---

2. Crim.R. 23(A) and R.C. 2945.05 both provide for the *making* of a waiver in open court. Neither law contains the word "execute," which is the meaning appellant himself has ascribed to the provision.

3. Appellant's dialogue with the trial judge was, in fact, much more substantial than the "one sentence inquiry" approved in *Morris.* Our review of the trial transcript reveals the following discussion occurred, in open court, prior to appellant Walker's actual trial:
   "THE COURT: Mr. Walker, you understand that you have a right to have this matter trialed [*sic*] by a jury of 12 people?
   "WALKER: I understand that.

that a defendant has voluntarily made an informed waiver of his constitutional right to a trial by jury. We conclude that a valid waiver of the right to a jury trial is accomplished only by completion of a two-step process, set forth by the statute and reinforced by Crim.R. 23(A). First, a defendant must sign a written statement affirming that he is knowingly and voluntarily waiving his constitutional right to a trial by jury, uninfluenced by promises or threats of any kind. Additionally, there must occur, in open court, a colloquy between the trial judge and the defendant himself, extensive enough for the judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right. We do not take the statute to mean, as urged by appellant, that the written waiver must be actually signed in open court, as long as the signed writing has been made a part of the record and the waiver is reaffirmed in open court. The record in this case clearly reflects that both procedural requirements were satisfied. Therefore, finding that appellant voluntarily made a knowing and intelligent waiver of a jury trial, we overrule the first assignment of error.

## II

"Defendant was deprived of his right to effective counsel pursuant to the Fifth, Sixth and Fourteenth Amendments, and Sections 10 and 16 of Article I of the Ohio Constitution when upon a review of all of the circumstances it is shown the defendant did not have a fair trial and substantial justice lacking [*sic.*]."

■ The United States Supreme Court has concluded that the Sixth Amendment right to assistance of counsel is satisfied only by "effective" representation. *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773, fn. 14. Under the two-pronged test for effective assistance of counsel pronounced in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, a defendant must show that "counsel made errors so serious that

---

"THE COURT: You wish to waive that right and have it tried to the Court and have me make those decisions?

"WALKER: Mmm, I don't really understand what, what you said there. Will you please report—I mean repeat what you said.

"THE COURT: Well, you understand that at a, at a jury trial all questions of fact would be resolved by the jury. The jury would decide what facts are proven and what are not. The Court would simply rule on matters of law and determine what evidence may be admitted and, of course, make sure that the attorneys abide by the rules, the proper rules in, in presenting the case.

"If you waive the jury, then I, as judge will make all decisions, even determinations of questions of fact and decide what evidence is proven and what is not proven.

"WALKER: I'll waive it.

"THE COURT: You wish to waive a jury?

"WALKER: Yeah.

"THE COURT: All right."

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Ohio has, essentially, adopted the *Strickland* analysis for determining whether counsel's performance was so defective as to require reversal of a conviction. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 220, 477 N.E.2d 1128, 1130. See, also, *State v. Frazier* (1991), 61 Ohio St.3d 247, 253, 574 N.E.2d 483, 488.

As cautioned in *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Further, a reviewing court in Ohio must presume that "a properly licensed attorney" is competent to conduct a criminal defense. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–480. Strategy and tactical decisions exercised by defense counsel "well within the range of professionally reasonable judgment" need not be analyzed by a reviewing court. *Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070, 80 L.Ed.2d at 701. The burden falls upon the appellant to " 'overcome the presumption that, under the circumstances, the challenged action' " falls within the scope of reasonable trial strategy. *Frazier*, 61 Ohio St.3d at 253, 574 N.E.2d at 488 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695). As stated by the court in *Strickland*, even professionally unreasonable errors by defense counsel do not violate the Sixth Amendment right to counsel absent an actual effect on the outcome of the trial. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379. Again, it is the appellant's burden to show that the verdict rendered would " 'reasonably likely have been different absent the errors.' " *Id.* at 143, 538 N.E.2d at 380 (quoting *Strickland*, 466 U.S. at 695–696, 104 S.Ct. at 2068–2069, 80 L.Ed.2d at 699). Thus, the "benchmark" for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Frazier*, 61 Ohio St.3d at 254, 574 N.E.2d at 489; see, also, *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

We will address appellant's specific allegations of ineffectiveness of counsel, mindful of the appropriate standards as reiterated, *supra*. Appellant complains that he received ineffective assistance of counsel because his attorney failed to file a pretrial motion to suppress evidence, and that he called a defense witness to the stand whose testimony on cross-examination resulted in the admission of evidence damaging to appellant's defense. Appellant first argues that his trial counsel should have filed a pretrial motion to suppress the incriminating statements made by appellant during the testifying officer's interview with him, because the officer failed to administer the *Miranda* warning.

■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court set out the guideline for states to follow in order to preserve criminal suspects' Fifth Amendment right to avoid coerced self-incrimination. *Miranda* mandates that all individuals who are taken into official custody must be advised of their constitutional rights under the Fifth and Sixth Amendments, and be given the chance to voluntarily waive those rights before being interrogated about suspected misbehavior. Thus, law enforcement officials will ensure that statements made by suspects are voluntary and not coerced.

Although the *Miranda* court suggested that the failure to administer the warnings would create a presumption of coercion when a suspect is in police custody, the court later refused to read *Miranda* so restrictively, stating:

"We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Oregon v. Elstad* (1985), 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222, 235.

Moreover, the Supreme Court has cautioned courts against extending *Miranda*'s protections further than originally intended:

"In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards* [*v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." *Arizona v. Mauro* (1987), 481 U.S. 520, 529–530, 107 S.Ct. 1931, 1937–1938, 95 L.Ed.2d 458, 468.

■ We find that, for purposes of *Miranda*, appellant herein was not "in custody," nor was he subjected to intimidating or coercive "interrogation" which would render the statements at issue inadmissible as evidence at trial. The action of the officer in this case does not in any way undermine the objectives expressed in *Mauro, supra*. Appellant was interviewed not in an "interrogation room," but in his own residence; he was not restrained in any way. No one else was present in the room. We find no coercive elements in these facts which would have rendered the simple investigatory questions asked of appellant a "ploy" to "subjugate the individual to the will of [an] examiner" in order to elicit an incriminating response. See *Rhode Island v. Innis* (1980), 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."). See, also, *Miranda*, 384 U.S. at 457, 86 S.Ct. at 1618, 16 L.Ed.2d at 713 ("the coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will

continue until a confession is obtained"). Furthermore, we find no evidence even of "subtle compulsion," which the Supreme Court rejected as equating with coercion in *Innis*. *Id.*, 446 U.S. at 301–302, 100 S.Ct. at 1690, 64 L.Ed.2d at 308 ("since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response").

██ We conclude that appellant's statements were given voluntarily, free of any compelling or deceptive influence. Accordingly, we are not inclined to scrutinize the strategy utilized by appellant's trial counsel in his decision not to file a motion to suppress evidence properly obtained. Strategy "well within the range of professionally reasonable judgment" need not be analyzed by a reviewing court. *Strickland*, 466 U.S. at 699, 104 S.Ct. at 2070, 80 L.Ed.2d at 701. We further note that, as stated by the *Miranda* court, "Confessions remain a proper element in law enforcement * * *. Volunteered statements of any kind are not barred by the Fifth Amendment * * *, [and] [a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

██ We also conclude that defense counsel's decision to call Jackie Morris as a witness was a tactical one. Morris incriminated others in the burglary by her responses to counsel's direct examination, and although counsel did not foresee the prosecutor's questions on cross-examination, the results of the examination were not unduly prejudicial to appellant. We find that any tactical errors defense counsel may have made were not so serious as to satisfy the test for ineffective counsel, nor did appellant suffer unfair prejudice as a result of the alleged deficiencies. The second assignment of error is overruled.

### III

"Upon a full review of the trial court's transcript and record it is clear the defendant was denied [a] fair trial and due process of law because of the cumulative error in this cause."

Appellant argues only that, even if no single error on defense counsel's part was egregious enough to deprive appellant of a fair trial, a cumulation of such errors has resulted in unfairness to appellant. Appellant further argues that, because he received an ineffective defense, he was prejudiced by the trial court's refusal to appoint another attorney, one of his own choosing, to represent him.

██ The record demonstrates that, before the state's presentation of its case, the court heard appellant's "motion" for new counsel. After asking appellant

several questions relevant to his request, and questioning defense counsel, the court denied appellant's "motion," stating as follows:

"You've not given me any specific instances which indicate to me that Mr. Spohn has done less than he should have in your case. So unless you can cite some specific instance for me, we are going to proceed with trial now. Your letter seems—merely seems to me you had a preference for attorney Tom Matthews."

The court further determined that appellant had simply misinterpreted or misunderstood much of his attorney's advice. We find no abuse of discretion in the court's denial of appellant's request.

Since we find no prejudicial error in the court's actions or in defense counsel's representation of appellant, we find no cumulation of errors which would warrant a reversal of the conviction. The third assignment of error is overruled.

## IV

"The court's verdict of guilty was against the manifest weight of the evidence and without sufficiency of evidence beyond a reasonable doubt for a finding of guilty."

Appellant complains that, whereas the most incriminating evidence in the state's case was evidence of his own statements to the investigating officer, and those statements were improperly admitted, the verdict was against the manifest weight of the (admissible) evidence. However, since we determined, *supra*, that appellant's statements were admissible, this argument is moot.

The elements of aggravated burglary which must be proven beyond a reasonable doubt are, in relevant part, as follows:

"No person, by force, stealth, or deception, shall trespass in an occupied structure [4] * * * with purpose to commit therein any theft offense * * * or any felony, when * * * [t]he occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present." (Footnote added.) R.C. 2911.11(A)(3).

The prosecution established at trial that appellant, either as a principal or an accomplice, entered the home of Donn Craner by force, during late evening hours when persons are likely to be at home, and admittedly was in possession of property which he knew was stolen from Craner's house. We find, "after viewing the evidence in the light most favorable to the prosecution," that a "reasonable

---

4. R.C. 2909.01 defines "occupied structure," in pertinent part, as "any house * * * which is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present." R.C. 2909.01(C)(2).

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. Thus, the verdict is not against the manifest weight of the evidence, and the assignment of error is not well taken. The fourth assignment of error is overruled.

Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW and HADLEY, JJ., concur.