## CITY OF AKRON

v.

## SUTTON.

Akron Municipal Court,
Summit County, Ohio.

No. 99 CRB 12143.

Decided April 4, 2000.

*Elisa Head,* Assistant City Prosecutor, for plaintiff.

*Arthur Axner,* for defendant.

ELINORE MARSH STORMER, Judge.

This case came before the court for a motion hearing and trial on March 9, 2000. Defendant asks the court to suppress statements he made to an Akron Police officer prior to his arrest on charges of domestic violence. Defendant claims that his statements should be suppressed because he was not advised of his *Miranda* warnings during what he argues was a custodial interrogation. Defendant bases his *Miranda* argument on the preferred arrest policies and procedures that both the state of Ohio and the Akron Police Department have adopted for domestic violence situations.

I. Facts of the Case

On October 27, 1999, the Akron Police Department responded to a call at 404 Highgrove Blvd., where defendant and his wife resided. The arresting officer interviewed the prosecuting witness, Victoria Sutton, outside of the home while

defendant remained inside the home. The officer then entered the home and spoke with the defendant. The officer testified that defendant admitted to hitting his wife with an open fist across the face, that this happened in the house after defendant and his wife were arguing about defendant's work, and that defendant stated that he was going to "kill her." The officer arrested defendant, charging him with domestic violence.

## II. Ohio's Preferred Arrest Policy in Domestic Violence Cases

The Ohio Revised Code requires local police departments to adopt procedures and policies relating to officer response to an alleged incident of domestic violence or of violating a protection order, according to the provisions of R.C. 2935.03. See R.C. 2935.032(A). R.C. 2935.03(B)(3)(b) articulates Ohio's preferred arrest policy in these cases:

"If * * * a peace officer has reasonable grounds to believe that the offense of domestic violence * * * has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the *preferred course of action* in this state that the officer arrest and detain that person." (Emphasis added.)

The statute further requires the officer to determine who is the primary aggressor before making any arrest. Cf. R.C. 2935.03(B)(3)(b). In addition, there is no preferred course of action regarding any family member the officer does not believe to have been the primary aggressor in the situation. See *id.*

Regardless of whether the officer actually arrests someone in connection with an alleged incident of domestic violence, he or she must make a written report of the incident; if there is no arrest, this report must include a clear statement of the officer's reasons for not arresting the alleged offender. See R.C. 2935.032(D). The Akron Police Department has complied with Ohio statutory requirements by adopting policies relating to incidents of domestic violence.

## III. *Miranda* Requirements

■ In *Miranda v. Arizona,* the United States Supreme Court held that individuals who are taken into custody or otherwise deprived of their freedom must be apprised of their rights to remain silent, etc., before any statements they make may be used against them in court. See (1966), 384 U.S. 436, 478–479, 86 S.Ct. 1602, 1629–1631, 16 L.Ed.2d 694, 725–727. In addition, the prosecution may not use any statements stemming from a custodial interrogation unless it demonstrates the use of these "procedural safeguards." *Id.* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–707. *Miranda* has been interpreted to require that two elements be present before warnings are mandatory: (1) the defendant must be in custody, and (2) there must be an interrogation. An interrogation is defined as

"explicit questioning and * * * words or actions on the part of police officers which such police officers 'should know are reasonably likely to induce an incriminating response from the suspect.'" *State v. Woodman* (Aug. 31, 1994), Lorain App. No. 93CA005723, unreported, 1994 WL 466794, quoting *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph five of the syllabus.

In Ohio, the *Miranda* requirements have been interpreted by the Court of Appeals for Marion County in *State v. Walker* (1993), 90 Ohio App.3d 352, 629 N.E.2d 471, where the defendant was accused of burglary and made inculpatory statements to police officers during initial questioning. In that case, the court noted that "'the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion,'" unless deliberately coercive or improper tactics were used in obtaining such admission. *Id.* at 360, 629 N.E.2d at 476, quoting *Oregon v. Elstad* (1985), 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222, 235. The court cited the purpose behind the *Miranda* warnings, which is to ensure that government officials do not use the coercive nature of confinement to "extract confessions that would not be given in an unrestrained environment." *Id.*, 90 Ohio App.3d at 360, 629 N.E.2d at 476, citing *Arizona v. Mauro* (1987), 481 U.S. 520, 529–530, 107 S.Ct. 1931, 1937–1938, 95 L.Ed.2d 458, 468.

The *Walker* court found that the defendant gave his statements voluntarily and that he was not in custody or subject to interrogation such that his statements must be inadmissible at trial. *Id.* at 361, 629 N.E.2d at 476. The court's holding on this issue is based on the following findings: (1) the defendant was interviewed in his own home, not at the police station, (2) he was not restrained in any way, and (3) there was no evidence of improper coercion. See *id.* at 360–361, 629 N.E.2d at 476.

The issue of custody in the context of domestic violence arose in *State v. Huff* (Jan. 31, 1990), Shelby App. No. 17–88–8, unreported, 1990 WL 7964. In *Huff*, officers responded to a report of a fight at defendant's home. Officers arrived on the scene and found Debbie Teasley, the defendant's live-in girlfriend, covered in blood. The defendant was also covered in blood at the time. The officers asked the defendant what had happened; he told them that Teasley had cut her wrist with a knife, and that he had tried to calm her down. Teasley attempted to cut the defendant, who then took the knife from her and struck her in the mouth.

Based on the conversation with the defendant, as well as conversations with Teasley and neighbors, the officers filed a complaint against the defendant for domestic violence, pursuant to which a summons was issued. The defendant filed a motion to suppress his statements, based on his Fifth Amendment rights under

*Miranda.* The municipal court granted the motion, from which the state appealed.

The Court of Appeals found that, since the defendant was never taken into custody, his *Miranda* rights were never an issue. The court also noted that the defendant answered the door, invited the officers in, and responded to their questioning. The court reversed the judgment of the trial court, concluding that this was a noncustodial interrogation and that there was no evidence to indicate that the officers' behavior "was such as to overbear the [defendant's] will to resist and bring about confessions not freely self-determined." *Id.*

## IV. Application to this Case

■ In the case *sub judice,* defendant claims that he was entitled to *Miranda* warnings before making any statements to the police because, under the preferred arrest policies of the Ohio Revised Code and/or the Akron Police Department, he was essentially in custody the moment the police officer entered his home.

However, based on the testimony presented, the court finds that, based on the totality of the circumstances, the context in which defendant made the statements does not rise to the level of a custodial interrogation in which defendant could reasonably have felt constrained. Rather, defendant voluntarily responded to the officer, answering questions about his job and feeling generally at ease with the officer. Moreover, under the Ohio and Akron Police policies regarding domestic violence, the officer's questions were intended to investigate the alleged incident, not to extract a coerced confession from defendant, the prevention of which is the policy underlying the *Miranda* requirements.

If this court were to adopt the defendant's argument, then police officers investigating domestic violence situations would have to "Mirandize" each and every person involved in any domestic violence incident. This heightened requirement would frustrate the purposes of the preferred arrest statute because police officers would not be able to ascertain what happened using a variety of techniques; they would always be constrained to formalize the process by "Mirandizing" every person to whom they intend to speak, potentially including the victim, since he or she may also be arrested under the statute. The primary purpose of these statutes is to ensure adequate police response to domestic violence situations and to ensure that a potentially negative or even dangerous situation is averted.

Thus, for the foregoing reasons, defendant's motion to suppress is denied.

*Motion denied.*