JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Timothy Holt (appellant) appeals the trial court's decision finding him guilty of aggravated murder and having a weapon while under disability. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On the evening of September 27, 2003, appellant went to Henry's Bar located on the corner of West 44th Street and Clark Avenue in Cleveland, Ohio. Appellant recognized a family friend, Anthony Mesic (Mesic), whom he had not seen in years. After speaking with Mesic, appellant called his mother, Latricia Koltiska (Koltiska), who also had not seen Mesic in approximately ten years. At approximately 10:30 p.m. Koltiska arrived at Henry's Bar and proceeded to reminisce and consume alcohol with Mesic. By this time appellant had left the bar. At approximately 1:45 a.m. on Sunday, September 28, 2003, Mesic and Koltiska left Henry's Bar holding hands.
 {¶ 3} At approximately 6:00 a.m. that same morning, Shannon McCown (McCown), Koltiska's daughter, received a call from Koltiska who was confused, scared and in need of a ride home from a gas station near West 45th Street. Koltiska also called 911 and her son Brian looking for a ride. McCown picked Koltiska up and took her home. Soon after this, Koltiska's sons Brian and appellant arrived at her house. Koltiska told all three of her children that Mesic forced her to perform oral sex on him. Appellant left Koltiska's home and Koltiska told him not to do anything stupid. At this time appellant was with his friend Gary Green (Green). Appellant made a telephone call and arranged to pick up a gun at a residence near West 111th Street and Lorain Avenue. Green drove appellant to the residence and appellant picked up a .40 caliber Glock firearm. Green then drove appellant to his apartment on Hilliard Road in Rocky River. Appellant told Green he was going to confront Mesic, and Green left.
 {¶ 4} Shortly after 8:30 a.m. appellant drove himself back to Henry's Bar and inquired as to Mesic's whereabouts. No one at the bar knew where Mesic lived. At approximately 9:18 a.m. appellant arrived at the home of Angela Perry (Perry), one of the bartenders at Henry's Bar who worked the night before, and asked if she knew where Mesic lived. Perry told appellant where Mesic's house was. At approximately 9:26 a.m. appellant's girlfriend, Claudine Stavole, called appellant's neighbor and asked if appellant was home. The neighbor told Stavole that she did not see appellant's car parked in its usual spot. Stavole asked the neighbor to call her when appellant arrived home.
 {¶ 5} At approximately 9:30 a.m. Mesic's neighbor, William Burrows (Burrows), was outside in his yard. Burrows saw a midsized blue car stop in the street in front of Mesic's house. A white male just over six feet tall and approximately 190 pounds, wearing a hooded gray sweatshirt, got out of the car and walked to Mesic's house. Burrows heard what he thought were several firecrackers and when he looked up, he saw the same male with the hood of the sweatshirt pulled over his head walk back to the car and drive away. Moments later, Cleveland Police Officer Donald Wellinger arrived at 12103 Belden Avenue and found Mesic lying in his driveway, bleeding from gunshot wounds. Officer Wellinger also found several shell casings. When the EMS arrived on the scene, they confirmed that Mesic was dead.
 {¶ 6} Subsequently, the Cleveland Police Department's Scientific Investigation Unit recovered eleven shell casings from the scene. Additionally, the Cuyahoga County Coroner's Office determined Mesic was shot ten times and recovered four bullets from his body. It was also determined that the weapon from which the casings and bullets were fired was a .40 caliber Glock firearm.
 {¶ 7} At approximately 9:48 a.m. appellant's neighbor called Stavole to tell her appellant returned home driving his light blue Pontiac. From his house, appellant then called Green to pick him up. When Green arrived, appellant told him that he confronted Mesic and he "got out of control." Later that evening, appellant and Green went to Green's girlfriend Stephanie Pittman's house. Appellant asked Pittman to provide an alibi for him for the night of September 27 into the morning hours of September 28, because something bad happened to his mom. On Monday September 29, Cleveland police detectives Joselito Sandoval and Melvin Smith went to Koltiska's house to interview Koltiska and her daughter McCown.
During this time appellant arrived at the house and voluntarily told the officers that he, Green and Pittman were at a bar during the early morning hours of Sunday September 29, when he received a call from his sister, McCown, telling him that their mother, Koltiska, was missing. Appellant further stated that he, Green and Pittman went to Henry's Bar and to Angela Perry's house to look for appellant's mother. Finally, appellant told the detectives that McCown called him to say that their mom was home.
 {¶ 8} On Tuesday, September 30, Pittman told a Cleveland Police Department homicide detective that she was with appellant and Green the night of September 27 and the morning of September 28, driving around looking for appellant's mother. Subsequently, Pittman told the police that she lied and she was with neither appellant nor Green during the times in question. Both Pittman and Green testified as state witnesses at appellant's trial as part of plea agreements.
 {¶ 9} On November 13, 2003, a Cuyahoga County Grand Jury indicted appellant on one count of aggravated murder with a firearm specification in violation of R.C. 2903.01 and one count of having a weapon while under disability in violation of R.C. 2923.13. Appellant pled not guilty. On February 17, 2004, appellant waived his right to a trial by jury. A bench trial began on February 27, 2004 and, on March 3, 2004, the court returned a guilty verdict on both counts. Appellant was sentenced to 20 years to life on the murder charge, three years for the firearm specification, and one year for having a weapon while under disability. The 20-years-tolife sentence and the three-year sentence were to run consecutively for an aggregate prison term of 23 years to life.
 II. {¶ 10} In his first assignment of error, appellant argues "the trial court in this case was without jurisdiction to conduct a bench trial as the jury waiver was not executed in strict compliance with the statutory requirements." Specifically, appellant asserts that his jury waiver was not made knowingly, intelligently and voluntarily because the trial court did not engage in a sufficient colloquy with appellant regarding waiving his right to a jury trial.
 {¶ 11} A criminal defendant has a right to a trial by jury pursuant to the Sixth Amendment of the United States Constitution and Section 5, Article I of the Ohio Constitution. Crim.R. 23(A) and R.C. 2945.05 govern the method by which a defendant is permitted to waive this right. Crim.R. 23(A) states in part, "[i]n serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. * * *" R.C.2945.05 states in part, "[s]uch a waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * * Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. * * *" Absent strict compliance with these statutory prerequisites, a trial court lacks jurisdiction to try a criminal defendant without a jury. State v. Pless (1996),74 Ohio St.3d 333, 337.
 {¶ 12} In the instant case, when the court asked appellant if he made a decision regarding a jury trial, appellant responded, "[y]es, I have. I have decided that it would probably be best for me to try it to the Court."[1] The court then asked appellant if he wanted to speak to his attorney further about waiving his right to a jury trial. Appellant responded "[s]ir, I — I kind of — I have made my decision. I think, I feel I understand what you're saying about, that a manslaughter charge wouldn't be charged, and I understand my penalty, if I was to get found guilty, but I feel that's the best thing to do."[2] The court then asked appellant a series of questions regarding whether he was coerced into making this decision. Appellant responded that his decision was voluntary. The court explained that appellant would also have to sign a written waiver and gave appellant and his attorney time to review the form. Finally, appellant's attorney stated to the court that he, appellant, and appellant's mother, brother and two sisters met that morning to discuss, among other things, whether there would be a jury trial or a jury waiver.
 {¶ 13} Ohio courts have characterized the colloquy required between the court and a criminal defendant regarding a jury trial waiver as "extensive enough for the judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right." State v. Carothers,
Cuyahoga App. No. 82860, 2004-Ohio-51, quoting State v. Walker (1993),90 Ohio App.3d 352, 358.
 {¶ 14} In the instant case, the record demonstrates that on February 17, 2004 the court engaged in a colloquy with appellant in open court that satisfied the statutory requirements and reaffirmed that appellant's jury waiver was knowing, intelligent and voluntary. Accordingly, appellant's first assignment of error is overruled.
 III. {¶ 15} In his second and final assignment of error, appellant argues his "convictions are against the manifest weight of the evidence." Specifically, appellant argues that the credibility of three state witnesses was questionable, and the court weighed their testimony too heavily when finding appellant guilty.
 {¶ 16} The proper test for an appellate court reviewing the manifest weight of the evidence is as follows:
 {¶ 17} "The court, reviewing the entire record, weighs the evidenceand all the reasonable inferences, considers the credibility of witnessesand determines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered."
 {¶ 18} State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 19} The trier of fact is entitled to believe or to not believe the witness' testimony. A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction. State v.Thompkins (1997), 78 Ohio St.3d 380. See, also, State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 20} In the instant case, appellant asserts that eyewitness William Burrows was not credible in that his testimony contradicts testimony from other state witnesses. Appellant claims Burrows testified that the same man who got out of a blue car wearing a gray sweatshirt and entered Mesic's yard on the morning of the murder was also at Mesic's the afternoon before.[3] However, other witnesses testified that Mesic and appellant were old friends who had not seen each other in years.[4]
Appellant claims this discrepancy casts doubt on Burrows' perceptions of the vehicle and the person he saw arriving at Mesic's house on the morning of the murder in question. In weighing this evidence, it is hard to say that the court lost its way when finding Burrows' testimony regarding the morning of the murder believable.
 {¶ 21} Additionally, appellant questions the credibility of Gary Green and Stephanie Pittman, the two state witnesses who testified in exchange for plea agreements. Appellant concedes that this fact alone does not make the witnesses' testimony incredulous, but asserts that both Green and Pittman "had reason to be strongly motivated by their plea agreements."[5] The credibility given to witnesses is primarily an issue for the trier of fact. See State v. DeHass (1967), 10 Ohio St.2d 230. Although both Green and Pittman may have had a motive to lie, Green's testimony is corroborated by other witnesses and testimony. A review of the court's comments regarding Green's testimony shows that little weight was placed on it.
 {¶ 22} "Frankly, the evidence here is overwhelming, even disregardingthe testimony of Gary Green. Gary Green, as far as the Court isconcerned, simply fills in some details, which would be relative, if onewanted to write a story about this, but since it's largely self-servingon his part, * * * it doesn't add very much."[6]
 {¶ 23} Finally, Pittman's testimony only concerned appellant's failed attempt to use her as an alibi during the time frame of Mesic's murder. Even if Pittman's credibility is suspect, her testimony that she was not with appellant at the time of Mesic's death[7] was not pertinent enough to the murder charge to create a manifest miscarriage of justice.
 {¶ 24} Appellant's convictions are not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and McMonagle, J., concur.
[1] Tr. 12.
[2] Tr. 15.
[3] Tr. 313-14.
[4] Tr. 381-85.
[5] Appellant's brief at 18.
[6] Tr. 954.
[7] Tr. 343.