[Cite as *State v. Johnson*, 2015-Ohio-4802.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 13-15-08

v.

CODY A. JOHNSON,

O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 13-15-09

v.

CODY A. JOHNSON,

O P I N I O N

    DEFENDANT-APPELLANT.

**Appeals from Seneca County Common Pleas Court**
**Trial Court No. 09-CR-0071 and 09-CR-0226**

**Judgments Affirmed**

**Date of Decision:  November 23, 2015**

APPEARANCES:

    *James W. Fruth* **for Appellant**

    *Angela M. Boes* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} In this consolidated appeal, defendant-appellant, Cody A. Johnson, appeals the judgments of the Common Pleas Court of Seneca County, Ohio, finding him in violation of the terms of his community control,[1] imposed on Johnson upon a judicial release from prison, and sentencing him to serve the previously-imposed prison terms. For the reasons that follow, we affirm the trial court's judgments.

### Relevant Background

{¶2} On October 2, 2009, Johnson entered a plea of guilty to two counts of burglary and four counts of assault in the Seneca County case number 09-CR-0071. (R.1[2] at 40.) He was found guilty and sentenced to four years in prison on the burglary charges, and to 180 days in jail on the assault charges. The sentences were to be served concurrently. On October 5, 2009, Johnson entered a plea of guilty to a seventeen-count Bill of Information, which included charges for complicity to illegal use of food stamps or WIC program, forgery, receiving stolen property, and misuse of credit cards, in the Seneca County case number 09-CR-0226. (R.2 at 2, 5.) He was found guilty and sentenced to eleven months in prison on each count, to be served concurrently. The sentence imposed in case 09-CR-

---

[1] In its judgment entries, the trial court did not specify that it was revoking Johnson's judicial release, using the term community control only. Although not specifically stated in the trial court's judgment entries, we note that the trial court's revocation of Johnson's community control was technically a revocation of the terms of community control previously ordered by the court as a term of Johnson's judicial release. See our discussion further in this opinion for the significance of the distinction.

[2] Because two trial court records are before us, we use R.1 when referring to the Seneca County case number 09-CR-0071; we use R.2 when referring to the Seneca County case number 09-CR-0226.

0226 was to be served consecutively to the sentences imposed in case number 09-CR-0071, resulting in a total sentence of four years and eleven months in prison.

{¶3} Johnson was granted judicial release in both cases on December 2, 2011. R.1 at 63, R.2 at 21.) As part of the conditions of the early judicial release, Johnson was placed on community control for five years. (*Id.*) As part of the community control conditions, Johnson was required to "abide by all laws including, but not limited to, the laws related to firearms and dangerous ordinance [sic]." (*Id.*)

{¶4} At the time relevant to the events at issue on this appeal, Johnson lived in a residence that belonged to Mr. Best, with his mother, Kelly Johnson ("Kelly"), who was Mr. Best's girlfriend. (Tr. at 8-9, 32, 52.) On January 26, 2015, Johnson attempted to use a credit card belonging to Mr. Best in Kohl's department store in Findlay, Ohio. The purchase was denied and the police were notified about the occurrence.

{¶5} On January 30, 2015, Johnson's probation officer, Scott Basinger ("Officer Basinger"), filed a Notification of Alleged Judicial Release Violations. (R.1 at 89; R.2 at 47.) The notification listed five alleged violations, including attempted use of a credit card without the permission of the owner. (*Id.*) The trial court conducted a full revocation hearing. At the hearing, the State claimed that Johnson attempted to use Mr. Best's credit card at Kohl's department store, without Mr. Best's permission. Johnson did not dispute the fact that he attempted

to make purchases at Kohl's with a credit card belonging to Mr. Best. He claimed, however, that he did not act without Mr. Best's permission. We summarize the relevant testimony below.

### *Relevant Testimony*

#### Officer Marshall

**{¶6}** Officer Doug Marshall ("Officer Marshall"), from the Findlay Police Department, was the officer who investigated the case. He testified that on January 26, 2015, he responded to a call from Kohl's department store referencing a possible stolen credit card. (Tr. at 68.) He spoke to the loss prevention officer and the store manager, who informed him that an individual, who was later identified as Johnson, and a few other people, approached the registers with over $700.00 worth of merchandise and attempted to pay with a Kohl's charge card. (Tr. at 69-70.) They were asked for an ID and, upon not being able to present one, they left the store because the purchase was denied. (Tr. at 70.) The store manager informed Officer Marshall that upon this occurrence, she had called the fraud department and learned that the card, which was registered to Mr. Best, had been reported stolen. (Tr. at 70.)

**{¶7}** Officer Marshall testified that Mr. Best walked into the store as he was watching a surveillance video of this attempted transaction. (Tr. at 70-71.) Officer Marshall spoke with Mr. Best and showed him the video. (Tr. at 71-72.) When Mr. Best saw Johnson's picture on the video, he pointed at it and said, "That

motherfucker has robbed me blind." (Tr. at 72.) Mr. Best told Officer Marshall that Johnson was his girlfriend's son and "that he didn't give any authorization for anybody to use [the credit card] and then he went on to explain how it got stolen or come [sic] up missing." (Tr. at 72.) Officer Marshall further testified as follows,

> he explained to me that he was going through some boxes, found a Fifth Third credit card and a Kohl's credit card. He said he left them laying out and later on that night, they come [sic] up missing. So he said he went up and called to cancel the Fifth Third card and found that there was [sic] some unauthorized charges on it. And there was nothing with the Kohl's card.

(Tr. at 72-73.)

{¶8} Mr. Best told Officer Marshall that he was scared of Johnson and "that he had to sleep with a 2x4 up against his bedroom door at night." (Tr. at 75.) Mr. Best further told Officer Marshall "that any time the police showed up, that he was told to be quiet and not answer the door, stuff like that." (Tr. at 75.) Officer Marshall commented that Mr. Best "very much feared for his safety in this whole incident." (Tr. at 75.) Officer Marshall also referred to Mr. Best's comments about an argument that Mr. Best had previously had with Kelly on the issue of calling the police about the stolen credit cards. (Tr. at 77.) Reportedly, Mr. Best did not call the police because Kelly was upset "that it would send her son back to prison." (Tr. at 77.)

{¶9} When Officer Marshall asked whether Mr. Best wanted to pursue charges against Johnson, "[h]is initial response was he was kind of afraid that if he

did, there would be some kind of retaliation, but he ended up deciding to." (Tr. at 78.) Officer Marshall asked Mr. Best to prepare a written statement, to which Mr. Best responded, "Can I think on that?" (Tr. at 78.) Mr. Best came the next day with a friend, Bernie, to provide a written statement. (Tr. at 78-79.) Bernie then wrote the statement for Mr. Best and Mr. Best signed it. (Tr. at 78-79.) This handwritten statement was identified as State's Exhibit 6, and it was submitted into evidence. (Tr. at 79.) The statement indicated that Johnson did not have Mr. Best's permission to use the credit card. (Tr. at 80.)

{¶10} Officer Marshall prepared a report regarding his investigation of the alleged unauthorized use of a credit card by Johnson. (Tr. at 76.) The report was identified and submitted at the hearing as State's Exhibit 5. (Tr. at 76.) It was consistent with Officer Marshall's testimony.

{¶11} Officer Marshall testified that "a couple nights later," he spoke to the Kohl's cashier who was at the register when Johnson attempted to use Mr. Best's credit card. (Tr. at 74.) The cashier indicated that Johnson identified himself as Mr. Best. (Tr. at 74.) Another exhibit represented a statement prepared by that cashier. (*See* State's Ex. 7.) This statement described the details of the occurrence and was consistent with Officer Marshall's testimony. (Tr. at 80; State's Ex. 7.) Officer Marshall also called Kohl's fraud department and confirmed that the credit card at issue had been reported stolen. (Tr. at 82.)

**{¶12}** On cross-examination, Officer Marshall admitted that Mr. Best's statement in State's Ex. 6 was not notarized. (Tr. at 83-84.) He was then presented with another statement, identified in the transcript before us as Defendant's Ex. B., which was notarized and purported to be the actual handwritten statement of Mr. Best.[3] (Tr. at 84.) The statement was dated February 13, 2015, which was over two weeks after the events at issue. (Tr. at 87; Def.'s Ex. B.) It read,

> This whole thing was a big misunderstanding between Cody, Kelly, and Gene. Cody asked Kelly if it would be okay to use Gene's card. She told him I probably wouldn't mind. I was upset because I thought Cody took my card without asking. I don't want to pursue charges against Cody. If Cody would have asked me for money to go shopping, I would have given it to him. I'm doing this of my own free will.

(Tr. at 84-85; Def.'s Ex. B.)

**{¶13}** Officer Marshall admitted that he could not exclude the possibility that Bernie influenced Mr. Best when writing the statement identified as State's Ex. 6. (Tr. at 85.) Likewise, he could not exclude the possibility that Kelly influenced Mr. Best into providing the statement identified as Defendant's Ex. B. (Tr. at 87.) He then testified that he knew of no reason why Bernie would try to influence Mr. Best's statement, but he knew that Kelly would have a reason to

---

[3] In the record before us, Exhibit B consists of one page with what appears to be a notarized signature of Mr. Best, dated February 13, 2015. No statement by Mr. Best is contained on this page. A piece of paper is attached to Exhibit B with a paper clip. This piece of paper is not notarized and appears to be cut away from a bigger sheet of paper. It contains a statement described in the transcript, as quoted above. The parties do not challenge authenticity or reliability of Exhibit B. Therefore, our note herein does not affect the resolution of the issues before us.

influence Mr. Best into providing the newer statement "to keep her son out of prison." (Tr. at 90.)

### Officer Basinger

**{¶14}** Another witness on behalf of the State was Officer Basinger. He testified that he had concerns that Mr. Best was being victimized by Johnson, and that Johnson and Kelly were taking advantage of Mr. Best's generosity. (Tr. at 42, 53.) According to Officer Basinger, the police department reported to him that on January 26, 2015, Johnson used Mr. Best's credit card at the local Kohl's department store without Mr. Best's permission. (Tr. at 11-13.) Officer Basinger spoke to Mr. Best, who told him that he "was very unhappy with Cody Johnson using his credit card without his permission." (Tr. at 14.) Mr. Best told Officer Basinger that Johnson did not have permission to use the credit card. (Tr. at 16.) Reportedly, Mr. Best wanted Johnson "removed" from the residence because he was "too scared and worried for his well-being, safety, with Mr. Johnson there." (Tr. at 15.) Officer Basinger placed Johnson in custody and took him to the Hancock County Justice Center. (Tr. at 13.) Johnson reportedly made an unsolicited statement to officer Basinger "that he accidentally used [Mr. Best's] card," thinking the card was his. (Tr. at 29.) Based on these facts, Officer Basinger filed the notice of violation at issue. (Tr. at 11-12, 27.)

**{¶15}** On cross-examination, Officer Basinger admitted that at the time of the hearing Johnson had not been charged with "any type of theft of credit card."

(Tr. at 32.) Officer Basinger was then presented with Defendant's Exhibit B, and agreed that "[t]here appears to be a signature" that purports to be Mr. Best's signature and that it "appears to be legitimate." (Tr. at 35, 36.) Officer Basinger confirmed that there was a notary clause and a signature underneath. (Tr. at 35.) He noted, however that this document was prepared on February 13, 2015, which was over two weeks after the events at issue and after Mr. Best had told officer Basinger that Johnson did not have permission to use his card. (Tr. at 51.)

{¶16} Even though the alleged victim in this case, Mr. Best, had been subpoenaed, he did not appear in court at the hearing. (Tr. at 55; R.1 at 96.)

*Trial Court's Decision and Appeal*

{¶17} The trial court found that Johnson violated the terms of his community control[4] by attempting to use a credit card without the permission of the owner. (R.1 at 97, 101; R.2 at 54, 58.) Therefore, the trial court imposed the original sentences in each of the cases, with credit for time served. Johnson now appeals the trial court's judgments, raising two assignments of error for our review, as quoted below.

> **No. 1: APPELLANT DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL AND, AS A RESULT, WAS ALSO DENIED HIS SIXTH AMENDMENT RIGHTS**
>
> **No. 2: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING APPELLANT GUILTY BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING THAT APPELLANT ATTEMPTED**

---

[4] See our comment in note 1, *supra*.

**TO MISUSE A CREDIT CARD AND VIOLATED THE TERMS OF HIS JUDICIAL RELEASE**

*Preliminary Matters*

**{¶18}** Although not specifically stated in the trial court's judgment entries, we note that the trial court's revocation of Johnson's community control was technically a revocation of the terms of community control previously ordered by the court as a term of Johnson's judicial release. We have made the following observation in *State v. Alexander*, 3d Dist. Union No. 14-07-45, 2008-Ohio-1485, ¶ 7:

> As this Court has previously noted, "the rules dealing with a violation of an original sentence of community control (R.C. 2929.15) should not be confused with the sections of the Revised Code regarding early judicial release (R.C. 2929.20) even though the language of R.C. 2929.20(I) contains the term 'community control' in reference to the status of an offender when granted early judicial release." *State v. Mann,* 3rd Dist. No. 3-03-42, 2004-Ohio-4703, at ¶ 6. The difference between R.C. 2929.15 and 2929.20 is that under R.C. 2929.15, the defendant's original sentence is community control, and he or she will not receive a term of incarceration unless he or she violates the community control sanctions. *Id.,* at ¶ 7, citing *State v. McConnell,* 143 Ohio App.3d 219, 224-225, 757 N.E.2d 1167, 2001-Ohio-2129, citing *State v. Gardner,* 3rd Dist. No. 14-99-24, 1999-Ohio-938. By contrast, when a defendant is granted judicial release, he or she has already served a period of incarceration, and the remainder of that prison sentence is suspended pending either the successful completion of a period of community control or the defendant's violation of a community control sanction. *Id.,* at ¶ 8, citing R.C. 2929.20(I). Should the defendant violate the terms of the community control sanctions while on judicial release, the trial court may reimpose the remainder of the original sentence. *Id.,* citing R.C. 2929.20(I); *State v. Wiley,* 148 Ohio App.3d 82, 772 N.E.2d 160, 2002-Ohio-460.

*Id.*

**{¶19}** Although with respect to sentencing, "an original sentence of community control" differs from community control imposed as part of judicial release conditions, the courts have used the same standard for revocation hearings in both situations. *Id.* at ¶ 8, citing *State v. Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 7; *see also State v. Westrick*, 196 Ohio App.3d 141, 2011-Ohio-1169, 962 N.E.2d 818, ¶ 23 (3d Dist.) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 1757, 36 L.Ed.2d 656 (1973), a probation revocation case when reviewing a judicial release revocation hearing). Therefore, in our analysis below we rely on cases that dealt with both community control and judicial release revocation hearings.

*First Assignment of Error—Ineffective Assistance of Counsel*

**{¶20}** In his first assignment of error Johnson alleges that his trial counsel was ineffective at the revocation hearing. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must first show that the counsel's performance was deficient in that it fell "below an objective standard of reasonable representation." *State v. Keith*, 79 Ohio St.3d 514, 534, 684 N.E.2d 47 (1997). Second, the defendant must show "that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, the defendant must prove a reasonable probability that the result of the trial would have been different but for his or her

counsel's errors. *Id.* In applying these standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 108, quoting *Strickland* at 669. Therefore, the court must be highly deferential in its scrutiny of counsel's performance. *State v. Walker*, 90 Ohio App.3d 352, 359, 629 N.E.2d 471 (3d Dist.1993), quoting *Strickland* at 689.

**{¶21}** We apply this standard to the following assertions of ineffectiveness raised by Johnson in this assignment of error: failure to object to hearsay evidence, failure to take reasonable steps to preserve Johnson's right to confrontation, failure to issue a subpoena to compel a witness appearance, and failure to object to proceeding without the presence and testimony of the purported victim. All of these claims relate to the absence at the hearing of the victim in this case, Mr. Best. Johnson alleges that allowing the State to use documentary evidence and hearsay in place of Mr. Best's testimony on the stand, without objection, constituted ineffective assistance of counsel.

**{¶22}** As we have previously recognized, "[c]ommunity control revocation hearings are not subject to the rules of evidence, and therefore, the use of hearsay is permissible." *Alexander*, 3d Dist. Union No. 14-07-45, 2008-Ohio-1485, ¶ 11, citing *Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 9. Nevertheless, although the use of hearsay is permissible at community control revocation hearings, we have noted that

the admission of hearsay evidence at a community control revocation hearing can compromise the probationer's due process right to confront adverse witnesses. [*Columbus v. Bickel*, 77 Ohio App.3d 26, 36-37, 601 N.E.2d 61 (10th Dist.1991).] This right protects a probationer's right to confront and cross-examine adverse witnesses at a revocation hearing unless the sentencing court specifically finds good cause for not allowing the confrontation of a witness. *Id.* The introduction of hearsay evidence into a revocation hearing is reversible error when that evidence is the only evidence presented and is crucial to a determination of a probation violation. *State v. Ohly,* 166 Ohio App.3d 808, 816, 853 N.E.2d 675.

*Ryan* at ¶ 9.

{¶23} *Ryan* does not mandate an unconditional exclusion of hearsay evidence. Rather, under its standard, exclusion is required if two conditions are satisfied: (1) hearsay evidence is the only evidence presented for establishing the violation and (2) no good cause exists for allowing the testimony without the confrontation of a witness. *Id.*; *see also State v. Miller*, 42 Ohio St.2d 102, 106, 326 N.E.2d 259 (1975) (recognizing "an exception to the confrontation requirement in parole revocation hearings where 'the hearing officer specifically finds good cause for not allowing confrontation' "), quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The United States Supreme Court, recognizing the right to confrontation as a procedural protection at the revocation hearing, noted that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey* at 489, *accord State v. Smith*, 4th Dist. Scioto No. CA 1847, 1990 WL 178142, *1 (Nov. 14, 1990).

Furthermore, "The admission into evidence of a hearsay statement pursuant to a firmly rooted hearsay exception does not violate a defendant's right of confrontation." *State v. Dever*, 64 Ohio St.3d 401, 1992-Ohio-41, 596 N.E.2d 436 (1992), paragraph three of the syllabus, citing *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). The Ohio Supreme Court has recognized that " '[a]dmission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements.' " *Id.* at 417, quoting *Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

{¶24} Considering these principles, we hold that Johnson has not established that his right to confrontation was violated by his counsel's failure to object to the hearsay testimony and by proceeding to the hearing without Mr. Best present. "[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance." *State v. Campbell*, 69 Ohio St.3d 38, 52-53, 630 N.E.2d 339 (1994), quoting *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). "Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 115 (2006), citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Nothing in the record shows that the decision to proceed to the hearing without Mr. Best's presence was

anything other than a strategic choice by Johnson's trial counsel, who wanted to use a document purporting to be Mr. Best's sworn affidavit to Johnson's benefit.

**{¶25}** Furthermore, nothing in the record indicates that if Johnson's counsel had objected to the hearsay statements on the basis of confrontation right, the trial court would have been required to exclude them. Conversely, there is sufficient evidence that would have allowed the trial court to find that "good cause" existed "for not allowing the confrontation of a witness." *Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, at ¶ 9. Both Officer Marshall and Officer Basinger indicated that Mr. Best was scared of Johnson and that Johnson's mother had influence over Mr. Best, having previously pressured him to not file charges.

**{¶26}** Finally, several hearsay exceptions would allow for the introduction of Mr. Best's statements without violating Johnson's right to confrontation. For example, Officer Marshall's testimony that Mr. Best pointed to Johnson when watching Kohl's surveillance video and stated, "That motherfucker has robbed me blind," could be construed as an "excited utterance" under Evid.R. 803(2). *See Dever*, 64 Ohio St.3d at 417, 1992-Ohio-41, 596 N.E.2d 436 (recognizing that hearsay statements did not violate the accused's right of confrontation under the exception for "spontaneous declarations"), citing *White*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). The officers' testimony about Mr. Best expressing that he was scared of Johnson could be classified under Evid.R. 803(3) as "[t]hen existing, mental, emotional, or physical condition."

**{¶27}** In light of the foregoing factors and applying the strong presumption that the trial counsel's conduct fell within the wide range of reasonable professional assistance, we hold that Johnson did not establish his claim of ineffective assistance of counsel at his revocation hearing. Accordingly, we overrule the first assignment of error.

### *Second Assignment of Error—Sufficiency of the Evidence*

**{¶28}** The decision to revoke community control rests "within the sound discretion" of the trial court. *State v. Moore*, 3d Dist. Union No. 14-08-40, 2009-Ohio-678, ¶ 12. Thus, we will not reverse the trial court's decision absent an abuse of that discretion. *Id.*; *State v. Berry*, 2012-Ohio-4660, 980 N.E.2d 1087, ¶ 33 (3d Dist.). Because abuse of discretion connotes more than an error in judgment, we will not substitute our judgment for that of the trial court, and will only reverse the trial court's decision if the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id.*

**{¶29}** Johnson asserts that the trial court's finding of violation was in error because the State did not satisfy its burden of proof. In order to support revocation of community control, the state must establish that the defendant violated conditions of his release. *Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 7. Unlike in criminal proceedings, however, the state is not required to prove its case beyond a reasonable doubt. *Id.* Rather, the evidence of a violation only needs to be substantial in nature to justify the revocation. *Id.*

**{¶30}** The argument in this assignment of error is based on the premise that "the only evidence against Johnson was the product of hearsay." (App't Br. at 15.) Johnson claims that this evidence should have been disregarded and without it, there would have been insufficient proof of violation. (*Id.*) Therefore, Johnson's argument in this assignment of error could more appropriately be characterized as an evidentiary challenge. But because no objection was made in the trial court to the hearsay evidence being admitted, we do not review the evidentiary issue here.[5] *See State v. Peagler*, 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996) ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue."). We thus review all evidence and testimony, as admitted by the trial court, in deciding whether the State provided substantial proof of Johnson violating his community control sanctions.

**{¶31}** Through the testimony of Officer Marshall and the reports submitted as State's Exhibits 5, and 7, the State showed that Johnson attempted to use Mr. Best's Kohl's charge card on January 26, 2015. Officer Marshall and Officer Basinger further testified that in the course of their investigation they learned that Johnson did not have permission to use Mr. Best's card. Thus, the State satisfied its burden of establishing substantial evidence that Johnson violated the terms of his community control by using a credit card without the permission of the owner.

---

[5] But see our discussion of the hearsay issue raised in the first assignment of error.

**{¶32}** We note that we are not reviewing this case for the weight of the evidence, as Johnson challenges sufficiency only. Therefore, in our re

**{¶33}** view of this assignment of error we need not consider contradictory evidence submitted by Johnson. We recognize, however, that the trial court, being in the better position to observe the witnesses and hear their testimony, is entitled to deference on issues of witness credibility and weight of the evidence. *See Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, at ¶ 7, citing *State v. Miller,* 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007.

**{¶34}** For the foregoing reasons, we overrule the second assignment of error.

### *Conclusion*

**{¶35}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgments of the Common Pleas Court of Seneca County, Ohio, are therefore affirmed.

*Judgments Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/hlo**