[Cite as *State v. Broderdorp*, 2011-Ohio-4894.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 13-11-11

      v.

CHRISTOPHER BRODERDORP,          **O P I N I O N**

      DEFENDANT-APPELLANT.

---

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 10CR0157**

**Judgment Affirmed**

**Date of Decision: September 26, 2011**

---

APPEARANCES:

    *Jerry C. Stollings* **for Appellant**

    *Derek W. DeVine and Heather N. Jans* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Christopher Broderdorp (hereinafter "Broderdorp"), appeals the judgment entry of the Seneca County Court of Common Pleas, which denied his pre-sentence motion to withdraw his guilty plea. For the reasons that follow, we affirm.

{¶2} This case stems from a string of break-ins that occurred throughout Seneca County, Ohio, from September to November 2009. Approximately a dozen businesses and/or houses were broken into and had items stolen from within.

{¶3} On August 15, 2010, Broderdorp was indicted on seventeen separate counts for the above mentioned criminal acts. The counts included the following: eleven (11) counts of Breaking and Entering, each felonies of the fifth degree; one (1) count of Burglary, a felony of the third degree; two (2) counts of Receiving Stolen Property, both felonies of the fifth degree; one (1) count of Tampering with Evidence, a felony of the third degree; one (1) count of Having a Weapon While Under Disability, a felony of the third degree; and one (1) count of a Pattern of Corrupt Activity involving thirty-six (36) listed incidents, with two (2) specifications, a felony of the first degree.

{¶4} Trial was scheduled for November 1, 2010; however, the matter was continued until February 14, 2011 pursuant to Broderdorp's motion for a continuance.

{¶5} On February 10, 2011, four days before the scheduled trial date, a hearing was held, during which time, Broderdorp withdrew his former not guilty plea and entered a plea of guilty to the first sixteen (16) counts of the indictment, and the lesser included offense of Attempted Engaging in a Pattern of Corrupt Activity involving thirty-six (36) listed incidents, with two (2) specifications, a felony of the third degree. The trial court conducted a Crim.R. 11 colloquy, accepted Broderdorp's guilty plea, and scheduled a sentencing hearing for February 24, 2011.

{¶6} On February 14, 2011, Broderdorp filed a motion for continuance of the sentencing hearing requesting the trial court give him more time to complete some work he had been hired to do. The State objected to Broderdorp's motion for continuance.

{¶7} On February 15, 2011, the trial court denied Broderdorp's motion.

{¶8} On February 23, 2011, the day before the sentencing hearing, Broderdorp filed a motion to withdraw his guilty plea. On February 24, 2011, the State filed its memorandum in opposition to Broderdorp's motion.

{¶9} On February 24, 2011, a hearing was conducted regarding Broderdorp's motion to withdraw his guilty plea. During the hearing, Broderdorp, who was the only witness to testify, stated two primary reasons for wanting to withdraw his guilty plea: (1) he wanted to make sure that his children had both parents, and (2) he claimed he was innocent of the charges filed against him.

{¶10} On February 28, 2011, the trial court overruled Broderdorp's motion to withdraw his guilty plea.

{¶11} On March 9, 2011, a sentencing hearing was conducted, and the trial court ultimately sentenced Broderdorp to a total of eight (8) years in prison.

{¶12} Broderdorp now appeals and raises the following assignment of error.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.**

{¶13} In his only assignment of error, Broderdorp claims that the trial court erred in denying his motion to withdraw his guilty plea.

{¶14} A defendant may file a pre-sentence motion to withdraw a guilty plea. Crim.R. 32.1. Although a trial court should freely grant such a motion, a defendant does not maintain an absolute right to withdraw his plea prior to sentencing. *State v. Xie* (1992), 62 Ohio St.3d 521, 526, 584 N.E.2d 715. Instead,

a trial court must hold a hearing to determine whether a "reasonable and legitimate basis" exists for the withdrawal. Id., at paragraph one of the syllabus.

{¶15} We consider several factors when reviewing a trial court's decision to grant or deny a defendant's pre-sentence motion to withdraw a plea, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Lane*, 3d Dist. No. 1-10-10, 2010-Ohio-4819, ¶21, citing *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310. See, also, *State v. Liles*, 3d Dist. No. 1-10-28, 2010-Ohio-5799, ¶¶15-17.

{¶16} Ultimately, it is within the sound discretion of the trial court to determine what circumstances justify granting a pre-sentence motion to withdraw a guilty plea. *Xie*, 62 Ohio St.3d 521, at paragraph two of the syllabus. Therefore, appellate review is limited to whether the trial court abused its discretion. *State v. Nathan* (1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324. An abuse of discretion connotes

more than an error of judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶17} With respect to whether the prosecution would suffer any prejudice, Broderdorp claims that, even though the prosecutor stated his reasons for why the State would suffer prejudice, the prosecutor did not adequately explain his reasons. We disagree. At the motion hearing, the prosecutor clearly articulated that this particular case was not a simple "three person theft case from Wal-Mart"; rather, it involved at least 60 witnesses who had rearranged all of their schedules, three months prior, to be available to testify during the trial against Broderdorp. (Feb. 24, 2011 Tr. at 26-27). In addition, the prosecutor stated that one of the other co-defendants had agreed to testify against Broderdorp; however, the prosecutor said that there were serious logistical issues in getting this other co-defendant to the trial to testify since he was being tried in the Southern District Court of West Virginia on charges of passing counterfeit U.S. currency. (Id. at 27-28).

{¶18} Moreover, despite Broderdorp's claims to the contrary, we find that Broderdorp was more than adequately represented by trial counsel throughout the proceedings. Broderdorp's trial counsel advocated for him at several hearings and

filed several motions on his behalf, including a Motion to Continue, a Motion to Modify Bond based on Broderdorp's alleged ability to maintain employment at a local construction company, a Notice of Alibi, a Motion for Funds to Retain a Private Investigator, a Motion for More Leniency on House Arrest, a Motion for Permission to Seek Medical Treatment While on House Arrest, a Supplemental Request for Discovery with numerous witnesses listed on Broderdorp's behalf and several attached documents, and finally, a Motion to Withdraw his Guilty Plea.

{¶19} We also find that the trial court conducted an extensive Crim.R. 11 hearing. At the change of plea hearing, the trial court conducted a thorough colloquy with Broderdorp, and informed him of all of the rights he was giving up by pleading to the charges as required by Crim.R. 11. The trial court informed Broderdorp that he was waiving his right to a jury trial, the right to confront witnesses against him, the right to subpoena witnesses to appear on his behalf, the privilege against self-incrimination, and the right to have the prosecutor prove all elements of the offense beyond a reasonable doubt. (June 28, 2011 Tr. at 3-18). See *State v. Ballard* (1981), 66 Ohio St.2d 473, 479-81, 423 N.E.2d 115. While Broderdorp claimed at the hearing on his motion to withdraw that he had not had adequate time to consider how the plea would impact his family, at the change of plea hearing, the trial court specifically inquired:

> **THE COURT: Mr. Broderdorp, is all of this what you believe to be the understanding, your understanding of the negotiations?**
> **MR. BRODERDORP: Yes, Your Honor.**
> **THE COURT: You're looking at a long time in prison and I wanna make sure that you do this with your eyes open. I don't know if you have family here or friends or – but you certainly have had the counsel of Mr. Kahler. Are you sure this is the way that you wanna go?**
> **MR. BRODERDORP: Yes, Your Honor.**

(Feb. 10, 2010 Tr. at 10-11). Later in the colloquy, the trial court further inquired of Broderdorp:

> **THE COURT: Again, are you entering his [sic] plea, these pleas voluntarily?**
> **MR. BRODERDORP: Yes.**
> **THE COURT: Do you need anymore time to think about it, to consult with Mr. Kahler, family or friends?**
> **MR. BRODERDORP: No.**

(Id. at 17). Not only did Broderdorp state that he did not need any additional time to consult with his family, but the record indicates that Broderdorp had even been given the plea offer a few days prior to the change of plea hearing. Thus, Broderdorp had ample amount of time to consider his family's wishes and contemplate the impact the plea agreement would have on him and his family.

{¶20} In addition, again despite Broderdorp's arguments to the contrary, the record also illustrates that Broderdorp understood the nature of the charges and the possible penalties. There were seventeen charges filed against Broderdorp and given the number of charges, the parties and the trial court spent a great deal of

time discussing the possible penalties Broderdorp faced with respect to each charge, including the maximum prison terms associated with each offense and the possible fines associated with each offense. (Id. at 3-10). Afterwards, the trial court specifically asked Broderdorp whether he understood the nature of the charges, the possible penalties he was facing, and the details of the plea agreement he was entering into that day; each time Broderdorp responded, "[y]es." (Id. at 11-13). Moreover, at the hearing on his motion to withdraw his guilty plea, Broderdorp even acknowledged that he had been informed at the change of plea hearing about the maximum penalties and the nature of the charges that he had been facing. (Feb. 24, 2011 Tr. at 18-21). Overall, there is nothing in the record that indicates that Broderdorp was confused or misunderstood the nature of the charges and the possible penalties he was facing.

**{¶21}** Furthermore, the record also indicates that the hearing on the motion to withdraw his guilty plea was extensive. The trial court permitted Broderdorp to testify on his own behalf and heard arguments from both sides regarding the motion. We note that while Broderdorp did testify at the hearing, he did not present any other witnesses nor did he introduce any documentary evidence in support of his motion.

**{¶22}** It is also clear that the trial court gave full consideration to Broderdorp's motion. Once again, a full and thorough hearing took place to

review Broderdorp's motion to withdraw his guilty plea. The trial court actively participated in the hearing by asking the parties several questions and allowing the parties to present additional arguments after the testimony was presented. Moreover, instead of issuing its ruling immediately, the trial court judge specifically noted that he wanted to "listen to the plea hearing myself" first before he ultimately issued his ruling on Broderdorp's motion. (Feb. 24, 2011 Tr. at 33). Four days later, after listening to all of the hearings again, the trial court issued a seven-page judgment entry thoroughly explaining the reasons behind its ruling denying Broderdorp's motion. (Feb. 28, 2011 JE).

**{¶23}** Moreover, with respect to whether the timing of the motion was reasonable, we note that Broderdorp waited until the day before he was supposed to be sentenced before filing his motion. Broderdorp entered his guilty plea on February 10, 2011, and after the hearing, sentencing was scheduled for February 24, 2011. On February 15, 2011, Broderdorp filed a motion to continue the sentencing hearing because he was "working on a roofing project" and needed "approximately one more week to get the job done." The trial court denied Broderdorp's motion the next day. Nevertheless, Broderdorp did not file his motion to withdraw his guilty plea until February 23, 2011 – less than twenty-four hours before his scheduled sentencing hearing was to take place.

**{¶24}** Finally, Broderdorp claims that he had legitimate reasons justifying his motion, one of which was that he was innocent. However, other than Broderdorp's delayed assertion that he was innocent, the record is silent as to any facts which might support his belated assertion. At no time during the hearing on the motion to withdraw the guilty plea did Broderdorp testify about any possible defenses he had to the underlying charges. Further, Broderdorp did not call any other witnesses nor did he present any evidence in support of his innocence. Essentially, all Broderdorp relies on in support of his claims that he was innocent is his own self-serving testimony at the motion to withdraw hearing. Nonetheless, "'bold assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit.'" *State v. McNeil* (2001), 146 Ohio App.3d 173, 176, 765 N.E.2d 884, quoting *State v. Hall* (Apr. 27, 1989), 8th Dist. No. 55289, at *1.

**{¶25}** Overall, after reviewing the record, this Court finds that Broderdorp's motion to withdraw was premised on nothing more than a change of heart. As Broderdorp stated at the hearing on his motion to withdraw, the other reason he pled guilty was because he thought that it would ultimately benefit his children. (Feb. 24, 2011 at Tr. at 4-10). However, Broderdorp said that after pleading guilty, he realized that his children really needed both of their parents around and so, as he explained at the hearing, he "would rather present [his] case

and be found guilty instead of pleading out to the guilty charges." (Feb. 24, 2011 Tr. at 9). While Broderdorp may have wished to "plead [his] case and see what happens," it is well-settled that a mere "change of heart" is insufficient grounds for allowing the withdrawal of a guilty plea. *State v. Ramsey*, 3d Dist. No. 1-06-01, 2006-Ohio-2795, ¶11, citing *State v. Drake* (1991), 73 Ohio App.3d 640, 645, 598 N.E.2d 115.

**{¶26}** Therefore, for all of the above reasons, we find that the trial court did not abuse its discretion in denying Broderdorp's motion to withdraw his guilty plea.

**{¶27}** Broderdorp's assignment of error is, therefore, overruled.

**{¶28}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**