[Cite as *State v. Pettaway*, 2015-Ohio-226.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 13-14-20

    v.

CHESTER PETTAWAY, JR.,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 12-CR-0201

**Judgment Affirmed**

Date of Decision: January 26, 2015

APPEARANCES:

    *Scott B. Johnson* for Appellant

    *Angela M. Boes* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Chester Pettaway, Jr. ("Pettaway"), brings this appeal from the judgment of the Common Pleas Court of Seneca County, Ohio, denying his motion to withdraw a plea of guilty and sentencing him to twenty-four months in prison for one count of possession of cocaine with specifications and one count of possessing criminal tools. Pettaway demands reversal of his convictions, alleging that the trial court erred in denying his motion to withdraw and that his trial counsel was ineffective. For the reasons that follow, we affirm the trial court's judgment.

### Facts and Procedural History

{¶2} Pettaway was indicted on October 24, 2012, on one count of possession of cocaine, in violation of R.C. 2925.11(A), (C)(4)(c), a felony of the third degree, with specifications, and one count of possessing criminal tools, in violation of R.C. 2923.24(A),(C), a felony of the fifth degree. (R. at 1.) The indictment was a result of a search warrant executed at Pettaway's residence. (Bond and Arraignment Hr'g Tr. at 3-4, Mar. 7, 2013.) Upon his arrest on March 6, 2013, Pettaway retained an attorney, Gene P. Murray ("attorney Murray" or "Mr. Murray"), and entered a plea of not guilty to the charges. (*See* R. at 6-7.) He was released on personal recognizance bond. (*See* R. at 7-10.)

{¶3} On March 13, 2013, the State filed its Answer to Discovery. (R. at 11.) The State indicated that it was providing "[a] copy of all lab or hospital

reports, books, papers, documents, photographs, tangible objects, buildings or places"; "[a]ll reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement officers"; "[a]ny item stamped 'counsel only' provided to counsel for the Defendant"; "a list of all witnesses of the state"; and "a report from an expert witness," in particular, BCI Laboratory Report # 12-21234. (*Id.*) The State also listed Pettaway's record of convictions as part of the disclosure. (*Id.*)

{¶4} It appears that a pretrial hearing was scheduled for May 15, 2013, but on May 14, 2013, attorney Murray filed a motion to continue, citing medical reasons. (R. at 12.) The trial court granted a continuance and the next recorded appearance was on July 2, 2013, when the parties were in the trial court "for plea date." (*See* R. at 13, 14; Plea Date Hr'g Tr. at 2, July 2, 2013.) There was no resolution of the case at that time and a jury trial was scheduled for September 16, 2013. (R. at 14; Plea Date Hr'g Tr. at 2.) On July 22, 2013, the State moved for a continuance of the trial date, citing the unavailability of "an essential witness," Officer Matt Armstrong, who "was the lead case manager." (R. at 15.) The State noted that "the speedy trial time (not considering any tolling events) [was] November 29, 2013." (*Id.*) The trial was then scheduled for November 21, 2013. (R. at 16.) On November 8, 2013, the state filed "a continuance to its Answer to Discovery previously filed in this case," providing the defense with "One (1) CD containing cell phone analysis." (R. at 22.)

{¶5} Four days before the scheduled trial date, on November 18, 2013, Pettaway appeared before the trial court "proposing to withdraw [his] former not guilty plea and enter a plea of guilty" to the offenses charged in the indictment. (Plea of Guilty Hr'g Tr. at 2, Nov. 18, 2013.)  The trial court conducted the plea colloquy.  Among other questions, the trial court asked,

> THE COURT:  Do you understand the nature of each of these charges and the possible defense that you might have?
>
> MR. PETTAWAY:  Yes, sir.
>
> THE COURT:  Are you entering this plea, these pleas voluntarily and of your own free will?
>
> MR. PETTAWAY:  Yes, sir.
>
> * * *
>
> THE COURT:  Any promises other than the Sentence Recommendation which we have already reviewed?
>
> MR. PETTAWAY:  No, sir.

(*Id.* at 8-9.)  After satisfying itself that Pettaway was competent and was entering the plea voluntarily and of his own free will, the trial court accepted Pettaway's plea of guilty.  (*Id.* at 5, 8, 10.)  The trial court ordered a presentence investigation report and continued sentencing to a later date.  (*Id.* at 11-12; R. at 24.)

{¶6} The sentencing was scheduled for January 17, 2014, but it was continued upon Pettaway's motion and rescheduled to February 10, 2014.  (R. at 27-28.)  On February 6, 2014, Pettaway filed a motion to withdraw the guilty plea

based upon a defect in the wording of the indictment, concerning sentence applicable to possession of cocaine. (R. at 29.) The parties appeared in court on February 10, 2014, the date scheduled for a sentencing hearing. (*See* Mot. Withdraw Hr'g Tr., Feb. 10, 2014; R. at 31.) But because of the recent motion to withdraw, the trial court again continued the sentencing date and scheduled the motion to withdraw for a hearing on February 27, 2014. (*Id.*) On February 25, 2014, the State amended the indictment, correcting the penalty portion for possession of cocaine. (R. at 34, 36.)

{¶7} On the date scheduled for a hearing on the motion to withdraw, Pettaway appeared in court and informed the trial court that he was no longer satisfied with attorney Murray's representation. (R. at 37.) The trial court relieved attorney Murray from his representation and appointed a different attorney for Pettaway. At that hearing, the State moved for a revocation of Pettaway's bond "so that he is available to meet with his attorney," which would help with a speedy resolution of this case. (Mot. Withdraw Att'y Hr'g at 4-5, Feb. 27, 2014.) The State alleged that Pettaway "continue[d] to just draw things out" and that his requests were made in the last-minute rather than in advance of hearings. (*Id.*) Attorney Murray explained that he was responsible for the delays due to his illnesses and his involvement in other matters. (*Id.* at 5.) The trial court continued the bond and scheduled a hearing on the motion to withdraw guilty plea. (R. at 37.)

{¶8} On April 25, 2014, the parties appeared in the trial court, with Pettaway being represented by his new attorney, Francis Marley. (Motions Hr'g Tr., Apr. 25, 2014.) Attorney Marley indicated that the previously-filed motion to withdraw guilty plea was moot due to the amendment of the indictment. (*Id.* at 3.) Therefore, the motion to withdraw guilty plea was withdrawn. (R. at 43.) The trial court scheduled this case for sentencing on May 29, 2014. (R. at 44.)

{¶9} On May 28, 2014, one day before the scheduled sentencing hearing, Pettaway filed a one-paragraph motion "to set aside his guilty plea." (R. at 47.) The sole reason for this request was Pettaway's assertion that his prior attorney, Mr. Murray, never provided him with discovery. (*Id.*) Pettaway alleged that "[h]aving read the discovery recently provided to him, Defendant now realizes he has a viable defense to the charges against him." (*Id.*) As a result of this filing, the trial court again continued the sentencing and scheduled a hearing on the motion to withdraw guilty plea for June 9, 2014. (Continuance of Sentencing Hr'g Tr., May 29, 2014; R. at 50.)

{¶10} After a hearing on Pettaway's second motion to withdraw the plea of guilty, the trial court denied the motion, finding that Pettaway's assertions do not give rise to any defense. (R. at 53, Op. & J. Entry, June 10, 2014.) Following his sentencing, Pettaway filed the instant appeal, alleging two assignments of error for our review.

**ASSIGNMENT OF ERROR ONE**

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA IN THAT HIS PLEA WAS NOT KNOWINGLY PROFFERED BECAUSE HE HAD NOT BEEN GIVEN ACCESS TO HIS DISCOVERY MATERIAL BY HIS RETAINED ATTORNEY PRIOR TO TRIAL DATE AND WAS TOLD BY THIS ATTORNEY THAT HE COULD WITHDRAW HIS PLEA LATER.**

**ASSIGNMENT OF ERROR TWO**

**THE COUNSEL FOR THE DEFENDANT PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.**

*Second Assignment of Error—*
*Ineffective Assistance of Counsel*

**{¶11}** In the second assignment of error, Pettaway alleges that his first trial attorney, Mr. Murray, provided ineffective assistance to him prior to and at the plea stage or the proceedings. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must first show that the counsel's performance was deficient in that it fell "below an objective standard of reasonable representation." *State v. Keith*, 79 Ohio St.3d 514, 534, 684 N.E.2d 47 (1997). Second, the defendant must show "that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, the defendant must prove a reasonable

probability that the result of the trial would have been different but for his or her counsel's errors. *Id.*

**{¶12}** A claim of ineffective assistance of counsel is waived by a guilty plea, unless the counsel's conduct affected the voluntary nature of the plea. *State v. Mata*, 3d Dist. Allen No. 1-04-54, 2004-Ohio-6669, ¶ 13, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 1992-Ohio-130, 595 N.E.2d 351 (1992).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]."

*Spates* at 272. Based on this standard, we must determine whether Mr. Murray's assistance was indeed deficient so as to result in Pettaway's plea not being voluntary or intelligent. In reviewing Pettaway's allegations we must, however, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 108, quoting *Strickland* at 669. Thus, we must be highly deferential in our scrutiny of Mr. Murray's performance. *State v. Walker*, 90 Ohio App.3d 352, 359, 629 N.E.2d 471 (3d Dist.1993), quoting *Strickland* at 689.

{¶13} Pettaway alleges that Mr. Murray acted below an objective standard of reasonable representation and caused his plea to become involuntary by failing to "provide him or allow him to see the discovery material in this case, even up to and including the fourth day prior to the continued trial date"; and "counseled [Pettaway] to change his pleas to 'guilty' as a way to buy more time so that [Pettaway] could see the discovery and to could [sic] avoid a potential bond revocation." (App't Br. at 17.) Because the burden is on Pettaway to show that Mr. Murray's performance was deficient and that his plea was involuntary, we start with reviewing evidentiary support for Pettaway's allegations. *See Matta* at ¶ 14.

*(1) Evidentiary Support for Pettaway's Allegations*
*of Failure to Provide Discovery*

{¶14} At the hearing on his motion to withdraw his guilty plea, Pettaway testified that Mr. Murray never shared with him "the information he obtained by way of discovery from the State of Ohio." (Mot. Withdraw Guilty Plea Hr'g Tr. at 6, June 9, 2014.) Pettaway testified that although he had requested discovery from Mr. Murray multiple times, his counsel had various excuses. (*Id.* at 7-8.) According to Pettaway, he first saw the discovery on April 25, 2014, which was five months after he had entered his guilty plea. (*Id.* at 7.)

{¶15} The only support for Pettaway's claims that Mr. Murray failed to provide him with the discovery comes from his own self-serving testimony, which

refers to facts outside of the record. There is absolutely no support in the record for Pettaway's claim that he had not seen discovery in this case. The record indicates that Mr. Murray was provided discovery by the State on March 13, 2013, and additional discovery on November 8, 2013. Apart from Pettaway's claims, made one day before his second scheduled sentencing hearing, there is no indication anywhere in the record that Mr. Murray had failed to show the discovery to Pettaway. During his multiple hearings and court appearances, Pettaway did not indicate to the trial court that he had not seen the discovery. On the contrary, when asked by the trial court at the plea hearing whether he understood the nature of the charges against him *and the possible defenses* that he might have, he answered in the affirmative. (Plea of Guilty Hr'g Tr. at 8, Nov. 18, 2013.) He did not inform the trial court at the plea hearing that he had not seen the discovery in this case.

{¶16} When Pettaway requested a new attorney, he did not inform the trial court that the reason for his dissatisfaction with Mr. Murray was failure to see the discovery in this case. (*See* Mot. Withdraw Atty Hr'g Tr. at 5, Feb. 27, 2014.) On April 25, 2013, when Pettaway appeared with his new attorney on the hearing regarding the first motion to withdraw, he did not inform the trial court that he still had not seen the discovery in this case. (*See* Motions Hr'g Tr., Apr. 25, 2014.) The fact that Pettaway did not assert Mr. Murray's failure to provide him with

discovery until the second motion to withdraw weighs against truthfulness of this assertion.

{¶17} Without any additional support in the record, we cannot find ineffective assistance based on Pettaway's unsupported allegations of failure to see discovery, which refer to facts outside of the record.

*(2) Evidentiary Support for Pettaway's Allegations*
*of the Plea Being Involuntary*

{¶18} Pettaway's claim of the plea being involuntary is that he was misled by attorney Murray, who had promised to file a motion to withdraw his guilty plea. But there is no indication in the record that Pettaway was misled or that his plea was entered involuntarily.

{¶19} Regarding the circumstances surrounding his plea, Pettaway testified that on November 18, 2013, Mr. Murray informed him about additional charges filed against him in other cases. (Mot. Withdraw Guilty Plea Hr'g Tr. at 8, June 9, 2014.) Those other charges would result in Pettaway's bond being revoked. (*Id.*) According to Pettaway, Mr. Murray suggested a strategy "to buy some time" and avoid being "reprimanded to jail until the jury, until the trial." (*Id.* at 8-9.) The "strategy" required that Pettaway "take the plea," which would "set the sentencing date back a couple months" and give his attorney "reasonable time to figure out what's wrong with the discovery." (*Id.* at 9.) Then, a week before the sentencing date, Mr. Murray would "put in a motion to take [Pettaway's] plea back." (*Id.*)

Pettaway testified that he did not want to take the plea but he did so because he "just didn't want to go to jail that day." (*Id.* at 9.) He stated, "So in order for me not to go to jail that day basically I had to take that plea. So trust to him that he was gonna do what he said he was gonna do I took the plea." (*Id.* at 9-10.) At the hearing on the motion to withdraw, Pettaway confirmed that he had understood his rights and the plea agreement when he entered it in November 2013. (Mot. Withdraw Guilty Plea Hr'g Tr. at 14-16, June 9, 2014.)

{¶20} Pettaway further testified that on February 6, 2014, Mr. Murray did file the promised motion to withdraw a guilty plea, but then informed him that the motion would likely be overruled. (*Id.* at 10.) Upon Pettaway's dissatisfaction, Mr. Murray allegedly suggested another strategy. (*Id.*)

> So he said what you can do is fire me. He said, I won't hold nothing against you. I won't hold no bad blood against you. If you fire me and take your plea back they gotta give you a new lawyer and they gotta start it all over again.

(*Id.*) Upon this purported advice, Pettaway "fired Mr. Murray for misrepresentation." (*Id.*)

{¶21} Pettaway's testimony about the circumstances surrounding his entering the plea of guilty contradicts his claims of the involuntary nature of his plea. Rather, it supports a finding that his decision to enter the plea was a conscious decision, which was motivated by Pettaway's desire to stay out of jail. Pettaway's statements that he took the plea in order to avoid going to jail confirm

that he knowingly made the decision to enter the plea agreement, as an alternative to immediate incarceration.

{¶22} Contrary to his later assertions that Mr. Murray had promised to file a motion to withdraw his plea, Pettaway told the trial court that no promises other than the sentence recommendation had been made to him. (Plea of Guilty Hr'g Tr. at 8, Nov. 18, 2013.) We additionally note that even if such promise had been made by Mr. Murray, it was fulfilled by the filing of the first motion to withdraw on February 6, 2014. (R. at 29.) There is no testimony that Mr. Murray made a promise to Pettaway that he would be successful in withdrawing the guilty plea.

{¶23} Considering all of the above, and applying a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," we find that Pettaway has failed to satisfy his burden of proving ineffective assistance of counsel, which would result in his guilty plea being involuntary. *See Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 108; *Matta*, 3d Dist. Allen No. 1-04-54, 2004-Ohio-6669, at ¶ 14. Accordingly, we overrule the second assignment of error.

### *First Assignment of Error—Denial of Pettaway's Motion to Withdraw Guilty Plea*

{¶24} In the first assignment of error, Pettaway alleges that he should have been allowed to withdraw his guilty plea and that the trial court erred in finding otherwise because a motion to withdraw guilty plea made before sentencing

should be freely granted. *See State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). The Ohio Supreme Court held, however, that under Crim.R. 32.1 "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Id.*, at paragraph one of the syllabus. Instead, it is within the sound discretion of the trial court to determine, upon a hearing, "whether there is a reasonable and legitimate basis" for the pre-sentencing withdrawal of the plea. *Id.,* at paragraphs one and two of the syllabus. Accordingly, our review of the trial court's judgment in this case is under an abuse of discretion standard. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32; *State v. Maney*, 2013-Ohio-2261, 993 N.E.2d 422, ¶ 17 (3d Dist.).

**{¶25}** Because "[a]n abuse of discretion is more than an error in judgment;" we will not substitute our judgment for that of the trial court, and will only reverse the trial court's decision if it was "unreasonable, arbitrary, or unconscionable." *Maney* at ¶ 17, citing *State v. Adams,* 62 Ohio St.2d 151, 157–158, 404 N.E.2d 144 (1980); *State v. Liles*, 3d Dist. Allen No. 1-10-28, 2010-Ohio-5799, ¶ 17, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Under this standard, the appellate courts in Ohio look at the following, nonexclusive, list of factors in their review of the trial court's decision on a motion to withdraw a plea:

> (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing

on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges.

*Maney* at ¶ 18, citing *State v. Griffin,* 141 Ohio App.3d 551, 554, 752 N.E.2d 310 (7th Dist.2001), and *State v. Fish,* 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995); *Liles* at ¶ 16. None of the factors is determinative on its own and there may be numerous additional aspects "weighed" in each case. *Griffin* at 554; *accord Fish* at 240. Therefore, we look at the totality of the circumstances presented in this case when arriving at our decision today.

*(1) Prejudice to the Prosecution*

**{¶26}** The trial court found that withdrawal of the plea would prejudice the prosecution. (R. at 53, Op. & J. Entry.) Challenging the trial court's finding of prejudice, Pettaway focuses on the State's assertion and the trial court's finding that it would be "extremely difficult" to secure the presence of one of the State's key witnesses, Detective Matt Armstrong, who has moved "several hours away." (*See id.*) Disputing the extent of prejudice stemming from Detective Armstrong's limited availability, Pettaway alleges that the trial court's finding was incorrect.

**{¶27}** Nevertheless, the trial court's finding of prejudice was not based solely on the difficulty in securing detective Armstrong. Rather, the trial court noted that considering multiple delays and continuances of the pretrial proceedings

and the trial date, as well as the fact that the plea was entered shortly before the scheduled trial date, "it would be highly prejudicial, unreasonable, and unfair to allow the Defendant to withdraw his guilty plea and require the State of Ohio to now again secure its witnesses and prepare for trial within such a limited time when it was at the Defendant's request to enter such a plea." (*Id.*) We do not find an abuse of discretion in the trial court's finding that the prosecution would suffer prejudice from Pettaway's withdrawal of his plea. Additionally, although Pettaway disputes the extent of this prejudice, he does not assert a complete lack of prejudice to the prosecution.

*(2) Representation Afforded by Counsel*

**{¶28}** Pettaway's claims of ineffective assistance are analyzed in detail in our discussion of the second assignment of error above, where we found no evidence that Mr. Murray's performance was deficient so as to affect the voluntary nature of Pettaway's plea. The trial court, having had an opportunity to observe Mr. Murray's conduct, found that Mr. Murray "zealously represented" his client. (R. at 53, Op. & J. Entry.) Furthermore, the trial court noted that "[a]t the time of entering his guilty pleas, defendant advised the court that he was satisfied with Mr. Murray's representation and never voiced any complaint or dissatisfaction with his attorney's representation until February 27, 2014." (*Id.*) The trial court remarked that even at the time of discharging Mr. Murray, Pettaway "did not provide this Court with any specific or legitimate complaint in terms of representation." (*Id.*)

{¶29} During the hearing, Pettaway indicated to the trial court that on February 6, attorney Murray admitted "on the record" "that he didn't represent [Pettaway] to the best of his ability." (Mot. Withdraw Guilty Plea Hr'g Tr. at 16, June 9, 2014.) Yet, no transcript of a February 6 hearing or any proceedings on that date appears in the record. On February 27, 2014, attorney Murray made a statement opposing the State's motion to revoke Pettaway's bond, explaining reasons for delays and continuances, and blaming his illness, as well as involvement in another case. (Mot. Withdraw Atty Hr'g Tr. at 5, Feb. 27, 2014.) There is no statement from attorney Murray admitting that his performance as Pettaway's attorney was deficient.

{¶30} We find no abuse of discretion in the trial court's findings. Apart from the self-serving testimony, which refers to facts outside of the record, there is no evidence that the representation provided by Mr. Murray requires that Pettaway be allowed to withdraw his guilty plea.

*(3) and (4) Crim.R. 11 Hearing and Hearing*
*on the Motion to Withdraw Plea*

{¶31} These two elements are not challenged by Pettaway, as he concedes that his "rights and the ramifications of entering a plea were discussed thoroughly with Defendant during the Crim.R. 11 hearing" (R. at 53, Op. & J. Entry), and that "every opportunity was given to the Defendant to present any evidence or witnesses to buttress his claim that he had not been afforded the opportunity to

inspect his discovery by his prior attorney and to explain the circumstances surrounding the plea he was seeking to withdraw." (App't Br. at 12-13.)

*(5) Trial Court's Consideration of the*
*Motion to Withdraw*

**{¶32}** Pettaway does not allege that the trial court failed to fully consider his motion to withdraw. Rather, he states that "it is not clear" whether this element of the analysis is satisfied. (App't Br. at 15.) In particular, Pettaway points out that the "ten-page Opinion" of the trial court "is nearly entirely word for word identical to the State's response to the Defendant's motion." (*Id.* at 13.) He does note several differences, where the trial court modified the language or offered additional explanation. (*Id.* at 14-15.)

**{¶33}** We cannot conclude that the trial court's use and adoption of the reasoning proffered by the State means that the trial court failed to give proper consideration to Pettaway's arguments. *See Westside Property Owners v. Schlesinger*, 597 F.2d 1214, 1216 (9th Cir.1979), fn. 3 ("Although this court has warned of the dangers of summarily adopting the proposed findings of the victorious party, *See Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339-40 (9th Cir. 1971), if the content of the district court's opinion is not erroneous, we do not believe the Source of that opinion should taint it. Moreover, we note that in this case the district court carefully modified the

Government's arguments as it felt proper, thereby dispelling the fear that the district court too readily accepted the victors' words.").

*(6) Timing of the Motion*

**{¶34}** The trial court found that, considering all of the events in these proceedings, multiple continuances, prior last-minute filings, which required additional continuances, and the fact that it was Pettaway's second attempt to withdraw his plea, the timing of the motion was unreasonable. Pettaway concedes that the timing of his motion to withdraw the guilty plea does not weigh in his favor. (App't Br. at 15.) Although Pettaway justifies the delay in filing the motion by the change of attorneys and the alleged failure to see discovery, we do not find an abuse of discretion in the trial court's finding that the timing of the motion one day before the rescheduled sentencing was unreasonable.

*(7) Reasons for the Motion*

**{¶35}** The trial court found that Pettaway's reasoning and justification for his desire to withdraw the plea "indicate[d] he likely ha[d] merely a 'change of heart,' " which is " 'insufficient grounds for allowing the withdrawal of a guilty plea.' " (R. at 53, quoting *State v. Broderdorp*, 3d Dist. Seneca No. 13-11-11, 2011-Ohio-4894, ¶ 25.) We recognize that Pettaway's alleged reasons in support of his request to withdraw his guilty plea align with Pettaway's claims for ineffective assistance of counsel, which we have analyzed and rejected above.

Therefore, we agree with the trial court that this factor does not weigh in favor of granting Pettaway's motion to withdraw his guilty plea.

*(8) Understanding the Nature of the*
*Charges and Potential Sentences*

**{¶36}** Pettaway does not allege that he did not have a full understanding of the nature of the charges or the potential sentences that he was facing when he entered the plea of guilty. The record supports the trial court's finding that during the Crim.R. 11 hearing, his "rights and the ramifications of entering a plea were discussed thoroughly." (R. at 53; *see also* Plea of Guilty Hr'g Tr. at 8-9, Nov. 18, 2013.) At the hearing on the motion to withdraw, Pettaway confirmed that he had understood his rights and the plea agreement when he entered it in November 2013. (Mot. Withdraw Guilty Plea Hr'g Tr. at 14-16, June 9, 2014.) Therefore, this element does not weigh in favor of granting the motion to withdraw.

*(9) Claim of Innocence or a Complete Defense*

**{¶37}** In his Brief on appeal, Pettaway does not allege that he was innocent or that he had a complete defense to the charges. In the trial court, however, Pettaway claimed that upon reviewing the discovery, he realized that the State had insufficient evidence to convict him. During the hearing on the motion to withdraw, Pettaway testified that "basically the State doesn't even have anything." (Mot. Withdraw Guilty Plea Hr'g Tr. at 23, June 9, 2014.) He claimed that the State lacked probable cause for the search warrant because in his understanding,

"you can't get the search warrant off a hearsay" or a "covert operation on somebody else." (*Id.*) Pettaway also alleged that the evidence was improperly collected. (*Id.* at 26.)

{¶38} In rebuttal of these allegations, the State offered testimony of detective Charles W. Boyer from the Tiffin Police Department, who was assigned to the Seneca County Drug Task Force METRICH enforcement unit. (*Id.* at 31.) Detective Boyer testified about multiple evidentiary clues that supported their application for a search warrant, including Pettaway's criminal history; curbside "trash pull," consistent with drug trafficking; complaints from neighbors of drug trafficking, which were consistent with the evidence found; and a controlled purchase operation involving another person, which provided evidence against Pettaway. (*Id.* at 38-39.) Detective Boyer then testified about execution of the search warrant at Pettaway's residence, where crack cocaine, money, drug paraphernalia, and contraband were found and collected. (*Id.* at 39-48.) Detective Boyer testified that Pettaway was briefly interviewed at the time of the execution of the warrant and admitted that he lived in the residence. (*Id.* at 49.) Detective Boyer further testified about the procedure used in collecting, documenting, and inventorying the evidence in this case. (*Id.* at 43-50.) He testified that one of the bills found among the money collected from the apartment was a marked twenty-dollar bill, which had been used in a previous controlled drug purchase involving

another person. (*Id.* at 50-51.) The data from a cell phone collected through the search was consistent with drug trafficking. (*Id.* at 52.)

**{¶39}** Based on that testimony, the trial court found that Pettaway's assertions do not give rise to any defense. (R. at 53.) These findings are supported by the record before us. Moreover, no irregularities in search procedures are apparent from the record and Pettaway seems to have abandoned this theory on appeal because he makes no arguments regarding illegality of the search. In fact, Pettaway's Brief does not specifically explain how this element of analysis would favor withdrawal of the plea. Pettaway has failed to show that he was innocent or had a complete defense to the charges.

**{¶40}** Concluding, the analysis of the nine factors does not show that Pettaway had a reasonable and legitimate basis for the plea withdrawal or that the trial court abused its discretion in overruling his motion to withdraw the guilty plea. Accordingly, Pettaway's first assignment of error is overruled.

### *Conclusion*

**{¶41}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Seneca County, Ohio is therefore affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**